Case 3:09-cv-02544-BEN-POR   Document 54   Filed 03/07/11   PageID.611   Page 1 of 8



FILED

2011 MAR -7 AM 11:49

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE GUADARRAMA,<br><br>                    Petitioner,<br><br>vs.<br><br>LARRY SMALL, Warden,<br><br>                    Respondent. | Case No. 09-CV-2544 BEN (POR)<br><br>**ORDER:**<br><br>**(1) OVERRULING PETITIONER'S OBJECTION;**<br><br>[Doc. # 52]<br><br>**(2) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; AND**<br><br>[Doc. # 48]<br><br>**(3) GRANTING RESPONDENT'S MOTION TO DISMISS**<br><br>[Doc. # 29] |

## I.

## INTRODUCTION

Respondent Larry Small moves the Court to dismiss Jorge Guadarrama's petition for a writ of habeas corpus. Respondent argues that Petitioner's challenge to the lawfulness of his detention in the administrative-segregation unit of his prison, <u>inter alia</u>, became moot upon Guadarrama's parole and subsequent conviction and incarceration at a new prison.

United States Magistrate Judge Louisa Porter agreed and recommended that the Court dismiss the petition both because of Guadarrama's parole and because he failed to allege proper

- 1 -

09cv2544

collateral consequences arising out of the subject disciplinary charges.

Petitioner timely objected. Petitioner maintains that – despite his parole from Calipatria State Prison – his petition still presents a live controversy. He insists that, as a result of the pre-parole issuance of the rules-violation charge (reported on California Department of Corrections ["CDC"] Form 115) and an administrative-segregated-unit placement notice (reported on CDC Form 114), he was subsequently indicted, detained in administrative segregation, convicted for new crimes, and sentenced. All of these developments, he asserts, comprise cognizable "collateral consequences" sufficient to preserve his habeas corpus petition.

Having reviewed the entire record in this action, the Court finds that Petitioner's objections are unsupported. Accordingly, Petitioner's objections are **OVERRULED**, the Magistrate Judge's report and recommendation is **ADOPTED** as the opinion of this Court, and the motion to dismiss is **GRANTED**.

## II.
## BACKGROUND

On August 18, 2005, a corrections officer's body search of an inmate[1] escalated into a prison-yard fight involving other officers and inmates.[2] One of those inmates was Jorge Guadarrama, the Petitioner. Immediately following the mêlée, Petitioner was confined to the administrative-segregation unit ("Ad-Seg") of Calipatria State Prison ("Calipatria").[3] On September 14, 2005, Calipatria prison administration ("Prison Administration") issued a rules-violation charge, or a "CDC Form 115," to Petitioner for the attempted murder of a corrections officer during the fight.[4] The charge carried a potential penalty of 48 months in Calipatria's "secured housing unit," from which Petitioner would not be eligible for release until – at a

---

[1] Pet. [Doc. # 1-1] at 53, 55, 56, 80–81.

[2] Id.

[3] Id. at 6, 95, 115 & 122.

[4] Id. at 53.

1  minimum – August 18, 2008.[5]

2      Prison Administration provided a copy of this CDC Form 115, as well as a report of the
3  prison-yard incident, to Petitioner on October 4, 2005.  That day, Guadarrama requested that the
4  disciplinary hearing in the matter be postponed until the county district attorney – to whom the
5  yard incident had been referred for prosecution consideration – determined what charges, if any, to
6  bring.[6]  More than a year later, Guadarrama was indicted on one count of attempted murder of a
7  peace officer, one count of assault, and three counts of battery.[7]

8      On July 17, 2008, Calipatria Prison Administration issued to Guadarrama an
9  administrative-segregated-unit placement notice, or a "CDC Form 114."[8]  They then informed him
10 that, because of this CDC Form 114, he would remain in Ad-Seg past his originally-scheduled
11 minimum eligible release date ("MERD") of August 18, 2008.[9]

12     More than a year after the issuance of the CDC Form 114, Guadarrama appeared in
13 California Superior Court to answer for charges relating to the prison-yard fight three years
14 earlier.[10]  Although he was paroled on February 23, 2010,[11] Guadarrama was subsequently arrested,
15 tried, and convicted by a jury of two counts of battery upon a nonprisoner for his part in the yard
16 incident.[12]  On March 15, 2010, he was sentenced to a prison term of 25 years to life.[13]  He is
17 currently incarcerated at Kern Valley State Prison.[14]

---

[5] Pet. [Doc. # 1-1] at 6.

[6] Id. at 6–7.

[7] Id. at 72–75.

[8] Id. at 97.

[9] Id. at 17.

[10] Id. at 19.

[11] Mot. Dismiss P&As [Doc. # 10-1] at 3; Pet. Not. Change of Address [Doc. # 6].

[12] Mot. Dismiss [Doc. # 29-2] at 18.

[13] Id. at 15–16.

[14] Not. Change Address [Doc. # 21].

## III.
## PROCEDURAL POSTURE

**A.    State & Federal Petitions for a Writ of Habeas Corpus to Challenge Ad-Seg Detention**

While awaiting criminal charges from the district attorney for the prison-yard fight, Guadarrama filed a petition for a writ of habeas corpus in the California Supreme Court.[15] That petition was denied without comment.[16]

Several months later, on November 10, 2009, Guadarrama filed the instant federal habeas corpus petition ("Petition").[17] To this Court, Guadarrama urged: (1) that his Ad-Seg detention past the MERD of August 18, 2008, was unlawful, (2) that the prison officials overseeing his disciplinary proceedings were biased; (3) that the issuance of the CDC Form 115 was unfounded; and (4) that Respondent violated Petitioner's Fourteenth Amendment right to due process.[18] As relief, Petitioner asked the Court to release him from Ad-Seg and to expunge all references to the CDC Form 115 in his prison files.[19]

**B.    The Warden's Motion to Dismiss**

Respondent Small then moved the Court to dismiss the Petition for, inter alia, mootness.[20] Specifically, Respondent asked the Court to note: (1) that Calipatria had already released Petitioner from Ad-Seg; and (2) that Petitioner is no longer subject to discipline for the CDC Form 115 because the time period for Prison Administration to convene proceedings had lapsed.[21]

**C.    The Magistrate Judge's Report and Recommendation**

In her January 25, 2011 report and recommendation ("Report"),[22] Magistrate Judge Porter

---

[15] Pet. [Doc. # 1-1] at 3–44.

[16] Pet. [Doc. # 1-2] at 2.

[17] See Pet. [Doc. # 1-1].

[18] Id. at 4.

[19] Id. at 43.

[20] Mot. Dismiss [Doc. # 29].

[21] Mot. Dismiss [Doc. # 29-1] at 1.

[22] [Doc. # 48.]

agreed with Respondent. The Magistrate Judge found that Petitioner had, in fact, been released from Ad-Seg – and Calipatria State Prison, itself – on February 23, 2010, when he was paroled.[23] In light of that parole, the Magistrate Judge determined that Guadarrama could not maintain his Petition – particularly as he could show no subsequent "collateral consequences" stemming from the prison disciplinary charges.[24]

D.  **Petitioner's Objections to the Report and Recommendation**

After the Court granted him a short extension, Petitioner filed a timely objection to the Report.[25] Petitioner takes exception to Magistrate Judge Porter's conclusion that no "collateral consequences" resulted from the Calipatria disciplinary proceedings. He insists that the issuance of the CDC Form 115 rules-violation charge – and the CDC Form 114 placement notice – led directly to his Ad-Seg confinement, to his subsequent conviction on January 5, 2010, and to his re-imprisonment on March 15, 2010.[26]

## IV.
## LEGAL STANDARDS

A.  **Effect of Specific Objections Upon Review of Magistrate Judge's Report**

A party dissatisfied with a United States magistrate judge's ruling may serve and file specific written objections thereto. Fed. R. Civ. P. 72(a). Although overly-general objections will not suffice, Spencer v. Bouchard, 449 F.3d 721, 725 (6th Cir. 2006), proper objections obligate the district court to review, de novo, those portions of a magistrate judge's report and recommendation challenged by a party. United States v. Rena-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), cert. denied, 540 U.S. 900 (2003). All unobjected-to portions are left undisturbed. Id. ("Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct."). A district court has broad discretion to accept, reject, or modify a magistrate judge's proposed findings without conducting a

---

[23] Report at 3:23.

[24] Id. at 3–4.

[25] See Order Granting Pet'r's Ex Parte Appl. for Ext. Time to File Objs. to Magistrate Judge's Report & Recommend. [Doc. # 51]; Obj. [Doc # 52].

[26] Obj. at 2.

hearing. 28 U.S.C. § 636(b)(1).

**B.     Mootness**

"A case becomes moot when 'it no longer present[s] a case or controversy under Article III, § 2, of the Constitution.'" <u>Wilson v. Terhune</u>, 319 F.3d 477, 479 (9th Cir. 2003) (alterations in original) (citing <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998)). The case-or-controversy requirement ensures that, through all stages of federal judicial proceedings, "[t]he parties ... continue to have a 'personal stake in the outcome' of the lawsuit." <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 478 (1990).

In the realm of habeas corpus law, an inmate or parolee who challenges the validity of his conviction will satisfy the case-or-controversy requirement. <u>Spencer</u>, 523 U.S. at 7. However, once the sentence underlying the conviction expires, the suit becomes moot *unless* some "collateral consequence" may be maintained. <u>Id.</u>

With regard to the particular issue presented by this Petition and Motion to Dismiss, while the Ninth Circuit Court of Appeals presumes that a habeas corpus petitioner's challenge to his *conviction* survives his release from custody, no such presumption applies to *prison disciplinary proceedings*. See <u>Wilson</u>, 319 F.3d at 480 ("We hold that the presumption of collateral consequences does not apply to prison disciplinary proceedings.").

## V.

## DISCUSSION

Guadarrama's habeas corpus petition challenges: (1) his Calipatria Ad-Seg detention; and (2) the Calipatria prison disciplinary proceedings – specifically, the issuance of CDC Forms 115 and 114, the latter of which Petitioner maintains is particularly suspect because it was premised *upon* the former, a rules-violation charge that apparently was never resolved. While Petitioner does not dispute the fact of his parole and release from Ad-Seg, he maintains that he suffered collateral consequences sufficient to keep his Petition alive.

Petitioner is wrong.

Collateral consequences may either be presumed or proved. See <u>Spencer</u>, 523 U.S. at 8 ("Subsistence of the suit requires ... that continuing 'collateral consequences' of the [challenged]

parole revocation be either proved or presumed.").

  Magistrate Judge Porter properly determined that, as a matter of Ninth Circuit law, a district court may ***not*** presume that prison disciplinary proceedings – such as the ones challenged, here – spawn collateral consequences for the purposes of defeating mootness. In <u>Wilson v. Terhune</u>, the Ninth Circuit reviewed a district court's denial, for mootness, of a habeas corpus petition. 319 F.3d 477 (9th Cir. 2003). There, an inmate escaped but was subsequently recaptured and returned to prison. Upon the prisoner's return, prison administration initiated disciplinary proceedings for his escape. The inmate filed a petition for a writ of habeas corpus to challenge those proceedings but, by then, "all the punishment imposed as a result of the disciplinary action had been either withdrawn or completed." <u>Id.</u> at 479. The district court dismissed the petition for mootness, and the Court of Appeals affirmed. The Ninth Circuit Court of Appeals rejected the argument that the CDC Form 115 continued to affect the prisoner's classification, institutional and housing assignments, and privileges. These, the Court held, were a consequence of the underlying escape, not the fact that "the escape was recorded on a 115." <u>Id.</u> at 480. Furthermore, any effect that the escape might have on future criminal proceedings "'are discretionary decisions' that 'are not governed by the mere presence or absence of a recorded violation,' but 'are more directly influenced by[] the underlying conduct that formed the basis for the parole violation.'" <u>Id.</u> (quoting <u>Lane v. Williams</u>, 455 U.S. 624, 632–33 (1982)). Put another way, Guadarrama's participation in the August 18, 2005 prison-yard fight is more likely to influence his subsequent treatment than the fact that his involvement was recorded on CDC Forms 115 and 114.

  Nor has Petitioner proven any collateral consequences stemming from his Calipatria disciplinary proceedings. His assertion that he was subsequently convicted and sentenced ***as a collateral consequence of*** his Calipatria-issued CDC Forms 115 and 114[27] rings hollowly. This averment fails to acknowledge that Petitioner was subsequently arrested, tried by a jury, and convicted of new criminal charges because he participated in an attack upon corrections officers on

---

[27] Obj. at 2.

August 18, 2005.[28]

## VI.

## CONCLUSION

For the foregoing reasons, Petitioner Guadarrama's objections are **OVERRULED**. The Report and Recommendation of United States Magistrate Judge Louisa S. Porter is hereby **ADOPTED** as the decision of the Court. Respondent's motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.**

Dated: March 7, 2011

THE HONORABLE ROGER T. BENITEZ
UNITED STATES DISTRICT JUDGE

---

[28] See Abstract of Judgment - Prison Commitment, People v. Guadarrama, No. JCF20241 (Cal. Super. Ct. filed Jun. 22, 2007) [Doc. # 29-2]. To the extent Mr. Guadarrama challenges the basis of his subsequent criminal conviction and present incarceration, *that* petition is not presently before the Court.